William C. Rand, Esq. (WR-7685)
LAW OFFICE OF WILLIAM COUDERT RAND
501 Fifth Ave., 15th Floor
New York, New York 10017
(Phone) (212) 286-1425; (Fax) (646) 688-3078

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
KONIK LUBOV,                                            :
individually and as collective representative of        :
other employees similarly situated,                     :
                                                        :        ECF
                        Plaintiff,                      :        21 Civ. 614
                                                        :
        -against-                                       :        **COMPLANT**
                                                        :        **AND JURY DEMAND**
HOME FAMILY CARE INC.,                                  :
ALEKSANDER KISELEV and JOHN DOES #1-10,                 :
                                                        :
                        Defendants.                     :
--------------------------------------------------------------------X

Plaintiff KONIK LUBOV ("Plaintiff" or "LUBOV"), on behalf of herself individually

and as collective representative of other employees similarly situated, by and through her

attorney, complains and alleges for her complaint against HOME FAMILY CARE INC.,

ALEKSANDER and JOHN DOES #1-10 (together "Defendant" or "Defendants") as follows:

## NATURE OF THE ACTION

1.      Plaintiff LUBOV was a home health aide who worked for Defendants for more

than 40 hours per week ("overtime hours") and, along with numerous other similar home health

aides, was paid straight time for her overtime hours and was not paid time and one half for her

overtime hours and was illegally not paid for many 24 hour shifts or illegally paid for only 13

hours of her 24 hour shifts and also was not paid minimum wages under the N.Y. Health Care

Worker Wage Parity Act.

2.      Plaintiff alleges on behalf of herself and other similarly situated current and former employees of the Defendants who elect to opt into this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 216(b), that they are: (i) entitled to unpaid wages from Defendants for overtime work for which they did not receive overtime premium pay, as required by law, and (ii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. §§201 *et seq.*

3.      Plaintiff further complains on behalf of herself, and a class of other similarly situated current and former employees of the Defendant, pursuant to Fed. R. Civ. P. 23, that they are entitled to back wages from Defendant for (a) hours worked for which they did not receive wages including wages as required under the Wage Parity Act, (b) overtime work performed for which they received straight pay and did not receive time and one half the minimum wage or time and one half their actual wages, and (c) spread of hours work performed for which they did not receive an extra hour of pay, as required by the New York Labor Law §§ 650 *et seq.* and the supporting New York State Department of Labor regulations and are also entitled to damages under the New York Wage Theft Prevention Act because Defendants did not provide proper notices to Plaintiff

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1337, 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5.      Venue is proper in this district pursuant to 28 U.S.C. §1391.

6.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C.

§§ 2201 and 2202.

## THE PARTIES

6.     Plaintiff LUBOV was, at all relevant times, an adult individual, residing in Kings County in New York State.

7.     Upon information and belief, Defendant HOME FAMILY CARE INC. (the "Corporate Defendant") is a New York corporation, with its principal place of business at 3501 Brighton 3rd Street, Brooklyn, N.Y. 11235.

8.     Upon information and belief, Defendant ALEKSANDER KISELEV is the Chief Executive Officer of the Corporate Defendant and owns more than 10% of the Corporate Defendant and has owned more than 10% of the Corporate Defendant during the last 6 years, and has been one of the ten largest owners of the Corporate Defendant during the time period that the Named Plaintiff worked for the Defendant.

9.     On June 5, 2019, Olga Kushnarenko by her attorney mailed a notice of personal liability to ALEKSANDER KISELEV pursuant to the provisions of Section 630 and 624 of the New York Business Corp. Law ("Liability Notice") on behalf of herself and other similar employees including Plaintiff KONIC LUBOV, at the address: HOME FAMILY CARE INC., 3501 Brighton 3rd Street, Brooklyn, N.Y. 11235.

10.     ALEKSANDER KISELEV received the Liability Notice on or before June 10, 2019.

11.     Defendant ALEKSANDER KISELEV and JOHN DOES #1-10 (the "Individual Defendants") participated in the day-to-day operations of the Corporate Defendant and acted intentionally and maliciously and are "employers" pursuant to the New York Labor Law Sec. 2

and the regulations thereunder and are jointly and severally liable with the Corporate Defendant.

12.    Upon information and belief, during the period from June 5, 2013 to the present the Individual Defendants had authority over the management, supervision, and oversight of the Corporate Defendant's affairs in general and exercised operational control over the Corporate Defendant's home health aide employees and other employees and their decisions directly affected the nature and condition of the home health care employees' employment.

13.    Upon information and belief, during the period from June 5, 2013 to the present, the Individual Defendants  (1) had the power to hire and fire the home health aide employees of the Corporate Defendant, (2) supervised and controlled the home health aide employees' schedules and conditions of employment, (3) determined the rate and method of payment of the home health aide employees, and (4) maintained employment records related to the home health aide employees.

14.    Upon information and belief, John Does #1-10 represent the officers, directors and/or managing agents of the Corporate Defendant, whose identities are unknown at this time and who participated in the day-to-day operations of the Corporate Defendant and acted intentionally and maliciously and are "employers" pursuant to the New York Labor Law Sec. 2 and the regulations thereunder and are jointly and severally liable with the Corporate Defendant.

**COLLECTIVE ACTION ALLEGATIONS**

15.    Pursuant to 29 U.S.C. §207, Plaintiff seeks to prosecute her FLSA claims as a collective action on behalf of all persons who are or were formerly employed by Defendant at any time since February 4, 2015 (time tolled by failure to post notice) to the entry of judgment in this case (the "Collective Action Period"), who were non-exempt employees within the meaning

of the FLSA and who were not paid minimum wages and/or overtime compensation at rates not less than one and one-half times the regular rate of pay for hours worked in excess of forty hours per workweek (the "Collective Action Members").

16.     This collective action class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendant, upon information and belief, there are at least 40 members of the Class during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys or knowledge of their claims.

17.     Plaintiff will fairly and adequately protect the interests of the Collective Action Members and has retained counsel that is experienced and competent in the fields of employment law and class action litigation.  Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

18.     A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them.  There will be no difficulty in the management of this action as a collective action.

19.     Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendant has acted on grounds generally applicable to all members. Among the common questions of law and

fact common to Plaintiffs and other Collective Action Members are

    a.  whether the Defendant employed the Collective Action members within the meaning of the FLSA;

    b.  whether the Defendant failed to keep true and accurate time records for all hours worked by Plaintiff and the Collective Action Members;

    c.  what proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

    d.  whether Defendant failed to post or keep posted a notice explaining the minimum wages and overtime pay rights provided by the FLSA in any area where Plaintiffs are employed, in violation of C.F.R. § 516.4;

    e.  whether Defendant failed to pay the Collective Action Members minimum wages and overtime compensation for hours worked in excess of forty hours per workweek, in violation of the FLSA and the regulations promulgated thereunder;

    f.  whether Defendant's violations of the FLSA are willful as that term is used within the context of the FLSA;

    g.  whether Defendant is liable for all damages claimed hereunder, including but not limited to compensatory, punitive and statutory damages, interest, costs and disbursements and attorneys' fees; and

    h.  whether Defendant should be enjoined from such violations of the FLSA in the future.

20.    Plaintiff knows of no difficulty that will be encountered in the management of this

litigation that would preclude its maintenance as a collective action.

## STATEMENT OF FACTS

21.    KONIK LUBOV ("LUBOV") was a home health aide/maid employed by Home Family Care Inc. ("Home Family Care") and Aleksander Kiselev ("KISELEV") (collectively "Defendants" or "Defendant" or the "Company"), from about November 19, 2017 to May 11, 2018 and then from July 13, 2018 to January 28, 2020 (together the "time period").

22.    During the time period, LUBOV worked for one woman client with the initials L.V. who lived with her son.

23.    Defendants are an employment agency that sent LUBOV to work as a home health aide/maid for customers located in New York City.

24.    During the time period, LUBOV never worked for Defendants outside of New York City.

25.    During the time period, LUBOV maintained LUBOV's own residence, and did not "live in" the homes of Defendants' clients or in the home of LUBOV's employer, as LUBOV's primary residence.

26.    During the time period, LUBOV was not an "exempt companion" of the Defendants' clients.

27.    While employed by Defendants, LUBOV generally worked more than 40 hours per week and was not paid time and one half for LUBOV's hours worked over 40 in a work week.

28.    LUBOV worked 24-hour live in shifts for Defendants during LUBOV's employment and regularly worked 7 24-hour live in shifts in a week.

29.    Defendants had no policies in place to determine if a health aide received three one hour meal breaks during a 24-hour live in shift and did not have any policies to determine if any health aide received 5 hours of uninterrupted sleep and 8 hours of sleep during a 24-hour live in shift.

30.    Even when Defendants had knowledge that a health aide was unable to get any sleep during the night or take any meal breaks, Defendants still illegally deducted 8 hours of sleep time and three hours of meal break time from the health aide's hours worked.

31.    Defendants had no policies in place to identify which health aides were not getting sleep or breaks during 24-hour live in shifts and to pay them for their lack of sleep or meal breaks.

32.    Defendants had no policy to identify which aides were not provided a bed to sleep on during 24-hour live in shifts.

33.    Even when Defendants knew an aide was not given a bed to sleep on during 24-hour live in shifts, Defendants did not pay the health aide for 8 hours of the aide's 24 hour shift.

34.    When LUBOV worked 24-hour live in shifts, LUBOV was required to stay overnight at the residences of Defendants' clients, and needed to be ready and available to provide assistance to Defendants' clients as needed.

35.    When LUBOV worked 24-hour shifts, LUBOV was not permitted to leave the client unattended.

36.    LUBOV was only paid for approximately 13 hours of LUBOV's  24-hour live in shifts. LUBOV was not paid any hourly rate for the other 11 hours worked.

37.    LUBOV was generally not permitted to leave the client's residence during

LUBOV's shift.

38.     Because Defendants' clients were often elderly and/or suffering from dementia, LUBOV did not get an opportunity during her 24-hour live in shifts to sleep for eight hours or 5 hours without any interruption.

39.     LUBOV did not get a one-hour break for each of three meals per day.

40.     LUBOV was often forced to combine LUBOV's meal times with the meal times of the Defendants' clients because they needed feeding assistance or constant supervision.

41.     LUBOV did not receive the "spread of hours" premium of one additional hour at the minimum wage rate for the days in which LUBOV worked a spread of more than ten hours.

42.     LUBOV also did not receive minimum wages, including minimum wages under the Wage Parity Act, for all LUBOV's hours worked and was not paid time and one half the minimum wage rate for LUBOV's overtime hours and was not paid full time and one half LUBOV's regular rate for LUBOV's overtime hours.

43.     Defendants never provided or offered to LUBOV any health insurance, free of charge, and never paid LUBOV for any vacation or holiday time off.

44.     Medicaid paid Defendants for some or all of LUBOV's services and the services of the other similar home health aide employees.

45.     Lubov's co-workers performed the same and/or similar work to that of herself and were paid in a similar manner and subject to the same rules and policies ("similar health aides").

46.     The similar health aides did not "live in" the homes of Defendants' clients as their primary residences.

47.     The similar health aides generally worked more than 40 hours per week, but were

not paid for every hour that they worked.

48.    The similar health aides were only paid for approximately 13 hours of their 24-hours shifts, and were not paid any hourly rate for the other 11 hours worked.

49.    The similar health aides were generally not permitted to leave the client's residence during their shift.

50.    When the similar health aides worked 24-hour shifts, they were required to stay overnight at the residences of Defendants' clients, and were required to be ready and available to provide assistance to Defendants' clients as needed.

51.    At all relevant times, Defendants have maintained a practice and policy of paying similar health aides for only 13 hours of their 24-hour shifts in violation of New York Labor Law.

52.    Defendants had no policies in place to determine if a health aide received three one hour meal breaks during a 24-hour live in shift and did not have any policies to determine if any health aide received 5 hours of uninterrupted sleep and 8 hours of sleep during a 24-hour live in shift.

53.    When LUBOV told her supervisor that LUBOV was unable to get any sleep during the night or any meal breaks, Defendants still deducted 8 hours of sleep time and three hours of meal break time from LUBOV's  hours worked.

54.    Defendants had no policies in place to identify which health aides were not getting sleep or breaks during 24-hour live in shifts and to pay them for their lack of sleep or meal breaks.

55.    At all relevant times, Defendants have maintained a practice and policy of

assigning herself and similar health aides to work more than 40 hours per week without paying

us one and one half times the basic minimum hourly rate for all hours worked in excess of forty

per week, in violation of New York State Labor Law and the Wage Parity Act.

56.    LUBOV and the similar health aides did not receive the "spread of hours"

premium of one additional hour at the minimum wage rate for the days in which they worked a

spread of more than ten hours.

57.    Defendants' actions as described herein were intentional and not made in good

faith.

58.    When LUBOV first started to work 24-hour shifts, LUBOV complained to

LUBOV's  coordinator and to payroll, that LUBOV was not able to sleep during the night or get

meal breaks but was not being paid for 8 hours of alleged sleep and 3 hours of meal breaks.

They responded that the Company does not pay more than 13 hours for a 24-hour shift.

59.    LUBOV  was not able to get 5 hours of uninterrupted sleep or 8 hours of sleep

during 24 hour live in shifts because LUBOV generally had to get up at least every four hours to

attend to the client, which included among other services, to take the client to the bathroom, to

get the client a glass of water, to calm the client when the client awoke in stress, to clean the

client's bed when the client urinated or defecated in the bed and/or to change the client's

pajamas.

60.    LUBOV's client had Alzheimer's Disease and never continuously slept for more

than half an hour at any time.

61.    During the 24 hour shifts, LUBOV was only given a pull out bed from a couch

which was broken and was very uncomfortable and did not allow LUBOV to get any sleep.

62.     During the time period, LUBOV was not paid full regular wages for all LUBOV's hours worked and was not paid overtime wages for all of LUBOV's hours worked over forty in a workweek ("overtime"), and was not paid an extra hour of pay for LUBOV's hours worked over a spread of 10 hours per day.

63.     During the time period, LUBOV often worked for 24 hours staying overnight at the client's house, and on these days was only paid for 13 hours, despite the fact that LUBOV's sleep was regularly interrupted generally at least 3-4 times by the client throughout the night which prevented LUBOV from getting 5 hours of uninterrupted sleep and/or 8 hours of sleep and despite the fact that LUBOV was not given any time off for meal breaks.

64.     LUBOV also generally signed in and out using the client's land line phone. When LUBOV clocked out, LUBOV generally entered codes showing the types of work that LUBOV had performed.  At times LUBOV filed handwritten time sheets. There were no codes to report not getting sleep or breaks during 24-hour shifts.

65.     During the time period, LUBOV did not receive a meal break because LUBOV was on call or working during LUBOV's break and regularly interrupted by the client while eating.

66.     During the time period, LUBOV was not paid for all LUBOV's hours worked and was not paid for LUBOV's hours worked over 40 hours a week ("overtime hours") at time and one half LUBOV's regular wages and at times was not paid for all LUBOV's hours at the minimum wage rate.

67.     During the time period, LUBOV's job responsibilities as a home health aide/maid included, among others, cleaning the entire house, cooking and doing the laundry.

68.     LUBOV was required to prepare three meals a day, breakfast, lunch and dinner.

69.     Breakfast usually consisted of coffee, eggs, toast, and oatmeal.

70.     Lunch usually consisted of a cooked meal with rice or pasta, beans, and a meat or fish.  Sometimes alternatively LUBOV made a sandwich or mixed vegetables for lunch.

71.     Dinner usually consisted of the similar items as lunch plus soup and desert.

72.     LUBOV was required to prepare whatever foods the customer requested.

73.     LUBOV generally was required to make the beds every morning.

74.     Defendants required LUBOV to do a number of tasks on a daily basis, including but not limited to: dusting, vacuuming, cleaning the bathroom (including the toilet, tub and shower), mopping the kitchen floors, scrubbing the kitchen counters, cleaning the pots and pans, and taking out the garbage.

75.     LUBOV generally was required to do the laundry two days per week.

76.     LUBOV spent at least 30% of LUBOV's  time directly performing household work.

77.     During the time period, LUBOV was not specifically notified by Defendants of the regular pay day designated by Defendants, Defendants' name, address and principle place of business and telephone number and LUBOV's  specific rate of pay as required by the New York Wage Theft Prevention Act.  LUBOV has not been given any specific notice of this information to sign in Ukranian, LUBOV's  first language or in English or in any other language and has not signed any such notice.

## CLAIM I
## FAIR LABOR STANDARDS ACT

78.     Plaintiff repeats and realleges each and every allegation of the preceding

paragraphs hereof with the same force and effect as though fully set forth herein.

79.     At all relevant times, Defendants have been and continue to be, employers

engaged in interstate commerce and/or the production of goods for commerce, within the

meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

80.     At all relevant times, Defendants employed, and/or continue to employ, Plaintiff

and each of the Collective Action Members within the meaning of the FLSA.

81.     Upon information and belief, at all relevant times, Defendants have had gross

revenues in excess of $500,000.

82.     Plaintiff consents in writing to be a party to this action, pursuant to 29 U.S.C.

§216(b).  The named Plaintiff's written consent is attached hereto and incorporated by reference.

83.     At all relevant times, the Defendants had a policy and practice of refusing to pay

its employees minimum wages and/or overtime wages equal to time and one half their

employees' regular wages for hours worked over forty in a work week.

84.     As a result of the Defendants' willful failure to compensate its employees,

including Plaintiff and the Collective Action members overtime wages and/or minimum wages

for all of their hours worked the Defendants have violated and, continue to violate, the FLSA, 29

U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

85.     As a result of the Defendants' failure to record, report, credit and/or compensate

its employees, including Plaintiff and the Collective Action members, the Defendants have failed

to make, keep and preserve records with respect to each of its employees sufficient to determine

the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

86.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

87.    Due to the Defendants' FLSA violations, Plaintiff and the Collective Action Class are entitled to recover from the Defendants, their unpaid minimum and overtime wages, and an equal additional amount as liquidated damages, additional liquidated damages for unreasonably delayed payment of wages, interest, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## CLAIM II
## NEW YORK LABOR LAW

88.    Plaintiff repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

89.    At all relevant times, Plaintiff was employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

90.    Defendants willfully violated Plaintiff's rights by failing to pay them wages in violation of the New York Labor Law and its regulations.

91.    The Defendants' New York Labor Law violations have caused Plaintiff irreparable harm for which there is no adequate remedy at law.

92.    Due to the Defendants' New York Labor Law violations,  Plaintiff  is entitled to recover from Defendants her unpaid wages, unpaid minimum wages, unpaid overtime wages, unpaid spread of hours wages, reasonable attorneys' fees, and/or costs and disbursements of the action, pursuant to New York Labor Law §663(1) et seq.

15

93.     Defendants willfully violated Plaintiff's rights by failing to provide her proper notices and wage statements in violation of the New York Wage Theft Prevention Act, N.Y. Lab. Law § 198(1-a) (enacted on April 9, 2011).

94.     As a result of Defendants' violation of the New York Wage Theft Prevention Act, Plaintiff is entitled to damages of at least $150 per week during which the violations occurred.

**CLAIM III**
(Breach of Contract –Third Party Beneficiaries of Wage Parity Act Contract
With New York State)

95.     Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint.

96.     Upon information and belief, at all times relevant to this complaint, Defendant were required to certify and did certify that they paid Plaintiff wages as required by NY Health Care Worker Wage Parity Act.

97.     The agreement to pay Plaintiff wages as required by the NY Health Care Worker Wage Parity Act was made for the benefit of the Plaintiff.

98.     Defendants breached their obligation to pay Plaintiff all wages they were due as required by the NY Health Care Worker Wage Parity Act and as result Plaintiffs and members of the Class were injured.

99.     Plaintiff, as a third party beneficiary of Defendants' contract with government agencies to pay wages as required by the NY Health Care Worker Wage Parity Act, and as a person protected by the NY Health Care Worker Wage Parity Act are entitled to relief for the breach of this contractual obligation and the violation of this Act, plus interest.

**CLAIM IV**
(Unjust Enrichment, Defendants' Failure to Pay All Wages Due Including Wages for Minimum

Wages under the NY Health Care Worker Wage Parity Act, and Spread of Hours)

100.    Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint.

101.    Under the common law doctrine of "unjust enrichment" insofar as Defendants, by their policies and actions, benefited from, and increased their profits and personal compensation by failing to pay Plaintiff: (1) all wages due for work performed; (2) an extra hour at the minimum wage  for working a "spread  of hours" in excess of 10 hours or a shift longer than 10 hours; and (3) all minimum wages due under NY Pub. Health§ 3614-c, the New York Health Care Worker Wage Parity Act.

102.    Defendant accepted and received the benefits of the work performed by Plaintiff and the Class at the expense of Plaintiff and the Class.  It is inequitable and unjust for Defendants to reap the benefits of Plaintiff's and the Class' labor, without paying all wages due, which includes but is not limited to all minimum wages due under NY Pub. Health§ 3614-c, the New York Health Care Worker Wage Parity Act, for hours caring for the clients of Defendants.

103.    Plaintiff and the Class are entitled to relief for this unjust enrichment in an amount equal to the benefits unjustly retained by Defendant, plus interest on these amounts.

## CLAIM V
(Violation of Wage Parity Act Minimum Wage Requirement)

104.    Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint.

105.    Upon information and belief, at all times relevant to this complaint, Defendants were required to certify and did certify that they paid Plaintiff wages as required by NY Health Care Worker Wage Parity Act.

106.    Under the NY Health Care Worker Wage Parity Act Defendants were required to pay Plaintiff minimum wages under the NY Health Care Worker Wage Parity Act.

107.    Defendants breached their obligations to pay minimum wages as required by the NY Health Care Worker Wage Parity Act, and as result Plaintiff and members of the Class were injured.

108.    Plaintiff and the Class are entitled to recover their unpaid minimum wages, plus interest, as relief for the violation of the NY Health Care Worker Wage Parity Act.

## CLAIM VI
(Breach of Contract-Wages)

109.    Plaintiff realleges and incorporates by reference all preceding paragraphs of this Complaint.

110.    Plaintiff entered into contracts with the Defendant under which Plaintiff was to provide home health aide and maid services and Defendants were required to pay (a) wages as required by law, (b) wages equal to time and one half the regular wage rate for hours worked during Federal holidays and also (c) a one week paid vacation annually.

111.    Plaintiff fulfilled her obligations under the contracts but Defendant failed to pay the wages as required by the contracts.

112.    As a result of Defendants' breach, Plaintiff is entitled to recover damages, plus interest.

## CLAIM VII
(Living Wage Act claim)

113.    Plaintiffs reallege and incorporate by reference all the allegations set forth above.

114.    NYC Admin. Code § 6-109 provides that an employer whose employees perform

work pursuant to city service contracts or subcontracts (the "City Service Contract(s)") must pay "no less than the living wage and must provide its employees health benefits (supplemental benefits) or must supplement their hourly wage rate by an amount no less than the health benefits supplement rate."

115.    NYC Admin. Code § 6-109 further provides that "[the abovementioned] requirement applies for each hour that the employee works performing the city service contract or subcontract."

116.    The "living wage" and "health benefits" or "health benefits supplement" are the wages and supplements set forth under Homecare Services in § 6-109 of the NYC Admin. Code. Upon information and belief, the schedule of living wages and supplements to be paid to all workers furnishing labor pursuant to the City Service Contract(s) was annexed to and formed a part of the City Service Contract(s), in accordance with NYC Admin. Code § 6-109.

117.    Plaintiff furnished labor to Defendants in furtherance of their performance of the City Service Contract(s).  Upon information and belief, Defendants willfully paid Plaintiff less than the rates of wages and benefits to which Plaintiff was entitled.

118.    Defendant's actions as described herein were intentional and not made in good faith.

119.    Upon information and belief, the City Service Contract(s) entered into by Defendants contained provisions requiring the payment of living wages and health benefits or health benefit supplements to Plaintiffs.

120.    Those living wages and health benefits or health benefit supplements were made a part of the City Service Contract(s) for the benefit of Plaintiff.

121.    Defendant breached the City Service Contract(s) by willfully failing to pay Plaintiff the living wages and health benefits or health benefit supplements for all labor performed.

122.    Further, NYC Admin. Code § 6-109 specifically requires, as a matter of law, that language mandating compliance with NYC Admin. Code § 6-109 be included with and form a part 13 of the City Service Contract(s).

123.    Further, upon information and belief, each and every City Service Contract(s) contained a provision, in identical or similar language, stating that "each and every provision of law required to be inserted in this Agreement shall be and is inserted herein.  Furthermore, it is hereby stipulated that every such provision is to be deemed to be inserted herein."

124.    By reason of its breach of the City Service Contract(s), Defendant is liable to Plaintiff for an amount to be determined at trial, plus interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of herself and all other similarly situated Collective Action Members, respectfully requests that this Court grant the following relief:

a.    Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b) and appointing Plaintiff and her counsel to represent the Collective Action members;

b.    Judgment in an amount to be determined at trial, plus interest;

c.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

d.  An order tolling the statute of limitations;

e.  An injunction against the Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.  An award of unpaid wages, spread of hours wages, overtime wages and minimum wages due under the FLSA, the New York Labor Law, the New York common law, and/or the NY Health Care Worker Wage Parity Act;

g.  An award of liquidated and/or punitive damages, as a result of the Defendants' willful failure to pay wages, minimum wages, and/or overtime wages pursuant to 29 U.S.C. § 216 and the New York Labor Law and the New York common law and the NY Health Care Worker Wage Parity Act;

h.  An award of prejudgment and postjudgment interest;

i.  An award of costs and expenses of this action together with reasonable attorney's and expert fees;

j.  Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

21

Dated: New York, New York
       February 4, 2021

                        LAW OFFICE OF WILLIAM COUDERT RAND


                        _____
                        William Coudert Rand, Esq.
                        *Attorney for Plaintiff*, Individually and on
                        Behalf of a putative collective class
                        501 Fifth Avenue 15th Floor
                        New York, New York 10017
                        Tel: (212) 286-1425
                        Fax: (646) 688-3078
                        Email: wcrand@wcrand.com